158 So.2d 753 (1963)
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Petitioner,
v.
Jerry J. CHICONE et al., Respondents.
No. 32430.
Supreme Court of Florida.
December 9, 1963.
Robert D. Canada, Tallahassee, for petitioner.
*754 M.W. Wells, Joel R. Wells, Jr., of Maguire, Voorhis & Wells, Orlando, for respondents.
O'CONNELL, Justice.
The petitioner, State Road Department of Florida, hereinafter referred to as the Department, seeks review by certiorari of that decision of the District Court of Appeal, 2nd District, reported in 148 So.2d 532, asserting that said decision is in direct conflict with the decision of this Court in Sunday v. Louisville and Nashville Railway Company, 1912, 62 Fla. 395, 57 So. 351.
Briefly stated the Sunday decision held that Section 29, Article 16, Florida Constitution, F.S.A. required a private corporation condemning lands to pay "full compensation" for the lands taken and that full compensation "* * * is the fair actual market value at the time of the lawful appropriation", including any increase in value which occurred in anticipation of the proposed improvement.
In the decision now under review the district court held that the trial judge did not abuse his discretion in granting the property owners, respondents here, a new trial. As appears in the reported decision the trial court granted a new trial on the grounds that: (1) it had committed error in allowing the Department's witnesses to testify as to the value of the lands being taken at the time the condemnation suit was filed where such witnesses testified that at such time the value of the lands was "depressed" by the imminence of the taking, and (2) it had refused respondents' request to charge the jury to disregard the effect, if any, of the proposed taking on the value of the properties.
In approving the trial court's order granting a new trial the district court pointed out that the Sunday case did not hold that a decrease in market value occurring in anticipation of a proposed improvement could be considered in determining compensation to be paid for property being condemned, but had only held that an increase in value could be considered.
There is no conflict between the Sunday case and this decision under review on the theory advanced by the Department for the reasons next explained.
First, the Sunday case merely held that an increase in value of lands occurring in anticipation of a proposed improvement was an element of the compensation to be paid for lands taken. It did not hold that a decrease in value due to the anticipated effect of the proposed improvement should likewise be considered in determining the compensation to be paid. Although logic and reason might suggest that the converse of a rule ought to be adopted in a proper circumstance, until adopted and expressed the implication of such converse cannot create a conflict. Adoption of a rule or principle does not by implication, inference or analogy constitute an adoption of the converse of such rule or principle.
Second, there is a vital difference between the issue in the Sunday case and the one here which would make inapplicable the converse of the holding in that case assuming we would adopt it in a proper case.
In the Sunday case we are dealing with increase in value occurring in anticipation of the completion of a proposed public improvement.
In the instant case we are not concerned with the effect on value which is caused by anticipation of a proposed public improvement, but rather with the effect on value of land of the imminence of its being taken by condemnation. Anticipation of the completion of a public improvement may cause the property to become more or less desirable and valuable depending on the nature of the intended improvement and the location of the land in relation thereto.
But when land is definitely marked for condemnation, and this is the situation which confronts us here, it shares none of the beneficial effects which could flow from *755 anticipation of the proposed improvement for it will not be available for private use when the project is completed. Once selected for condemnation the marketability, both sale and rental, and to some extent the use, of property is sterilized and its value, either as determined by market value or use by the owner, is decreased. This decrease no doubt is in proportion to the lapse of time between the announcement that the lands will be taken and the actual taking. It is difficult to conceive of a situation in which property will increase in value because of the prospect of condemnation. A tenant's use of such property can only be temporary, and a purchaser would buy only an undetermined award in a condemnation suit.
Nevertheless, while we find no conflict in decisions on the theory advocated by the Department, there is conflict between the instant decision and others rendered by this Court on another pertinent issue which gives us jurisdiction to consider and decide this cause.
Considering the district court's opinion as a whole, including the trial court's order recited therein, it holds in effect that where property is depreciated in value because of the imminence of taking the value thereof shall not be measured as of the time of taking, but at a time prior to the effect of the prospect of condemnation.
However, in the Sunday case, in many others, and recently in Yoder v. Sarasota County, Fla. 1955, 81 So.2d 219, "We have consistently ruled that the amount of compensation to be awarded to a property owner when his property is sought to be taken in an eminent domain proceeding is the value of the land taken at the time of the lawful appropriation." In the Yoder case we specified that time as being determined by the filing of the condemnation suit in the proper court.
Strict application of the rule of the Yoder case without qualification would mean that in cases such as this, where the value of the property at the time of the taking is depreciated because of the prospect of condemnation, compensation would be awarded on the basis of value as depreciated. The district court held to the contrary which creates a jurisdictional conflict.
The relevant facts are simple. In 1957 the Department publicly announced the route through Orlando of Interstate Highway No. 4. Four of the parcels required for the right of way were owned by the respondents here. These parcels, all in one block, had improvements thereon all of which were leased when the route of the proposed highway was announced.
In 1958 the Department filed the first of several condemnation suits necessary to acquisition of the right of way for the highway, but the suit to acquire the parcels here involved was not instituted until May 10, 1960. On that date all of the parcels and improvements thereon were vacant except for a parking lot which was rented on a month to month basis.
At the trial the Department offered the testimony of two experts as to the value of the property involved. Both of these witnesses testified that in arriving at their opinions of value of the subject properties they "discounted" the value of the properties because of the prospect of taking by the Department.
On cross examination respondents' counsel asked the Department's witness, Mr. Duckworth, concerning his statement as to values:
"Q. They don't represent all the values of the property without the eminence of the expressway, but represent the discounted value because of the State Road Department stating they were going to take this property, is that correct?
"A. That's correct.
"Q. That is what your value is represented on?

*756 "A. That is correct."
This witness also testified that his discount in value was approximately 20% of the value of the properties prior to the announcement of the route of the highway. He supported his use of this discount by saying that anyone renting the property after the announcement of the route of the expressway would have paid a lesser rental because of the prospect of condemnation.
The other expert for the Department, Mr. Bettes, testified that the properties had decreased in value because of the imminence of the taking and admitted that he had considered this fact in arriving at his opinion of value saying:
"A. That is correct, and is based on the reduced rental that has come into effect. There hasn't been any sales, but there has been a reduced rental which shows the depreciation since the announcement of the expressway."
When asked what discount he used he answered:
"A discount over and above what the property would have been, in my opinion, worth prior to the announcement of the expressway."
The respondent landowners made timely objection to evidence based on the depressed or discounted value of the land, moved to strike it and also requested the court to charge the jury to disregard the effect on value of the imminence of condemnation. All of these efforts were denied by the trial judge.
The jury awarded compensation in an amount between the high and low values testified to by the respective parties. Thereafter the trial court granted a new trial which led the cause to the district court.
The single question for decision by this Court is whether compensation for lands taken in eminent domain proceedings shall be measured by their value as affected by the imminence of condemnation or by their value as it would be if there had been no threat of taking.
We make it clear that we are not here concerned with the question of decrease in value, before appropriation, because of the anticipated damaging effect of a proposed public improvement which when completed might have a harmful effect either on a specific parcel or on all properties in a community. While not of major importance it is interesting to note that one of the Department's experts testified that only the properties being condemned for this highway had decreased in value and that other property along but outside the right of way had actually increased in value after the announcement of the route.
The Department urges that the Sunday case is controlling because, so it says, that case held that in determining compensation for lands taken in an eminent domain proceeding it was proper to consider the effect of a proposed public improvement on the value of the lands taken. It logically argues that if this effect is proper to be considered when it causes an increase, it should also be considered when it causes a decrease.
For the reasons explained in our discussion on jurisdictional conflict earlier in this opinion the holding in the Sunday case is not applicable here.
The whole purpose of and reason for the constitutional provisions, both state and federal, relating to compensation for property condemned is to insure that the property owner will be adequately and fairly compensated in money for that property which is taken from him. These provisions and the statutes implementing them are designed to protect the owner against confiscation of his property.
Despite the fact that there is a noticeable trend away from recognition of rights of the individual in favor of "society", or the community at large, this Court, and most, if not all, others have steadfastly held to the view that a property owner is *757 entitled to be justly and fairly compensated for the loss he sustains when his property is taken from him.
Determining just compensation is the ultimate objective of condemnation proceedings. This is easier stated than achieved. This difficulty has led this Court to say that just compensation is to be determined by equitable principles and that its measure varies with the facts. Orange State Oil Co. v. Jacksonville Express Authority, Fla.App. 1959, 110 So.2d 687.
In United States v. Virginia Electric and Power Co., 1961, 365 U.S. 624, 81 S.Ct. 784, 789, 5 L.Ed.2d 838, the U.S. Supreme Court said that "The word `just' in the Fifth Amendment evokes ideas of `fairness' and `equity' * * *" and then said that the result contended for by the government would not comport with those standards.
In the case now before us we do not think the result contended for by the Department would be just, fair or equitable.
The rule advocated by the Department and followed in the trial in the instant case, would permit a condemnor to depreciate property values by a threat of condemnation then take advantage of the depressed value which results by paying the landowner the depreciated value.
This would amount to a confiscation of the owner's property to the extent of the depreciation in value. All of our laws, organic and statutory, are intended to prevent this happening.
The case of United States v. Virginia Electric and Power Co., supra, offers some support to our holding in this opinion.
In that case the respondent power company owned a flowage easement over certain lands being condemned by the federal government. The government contended that the easement was "* * * valueless against condemnation by the United States."
That court rejected the government's position saying:
"The court must exclude any depreciation in value caused by the prospective taking once the Government `was committed' to the project. * * * As one writer has pointed out, `[i]t would be manifestly unjust to permit a public authority to depreciate property values by a threat * * * [of the construction of a government project] and then to take advantage of this depression in the price which it must pay for the property' when eventually condemned. 1 Orgel, Valuation under Eminent Domain, § 105, at 447 [2nd ed]; see Congressional School of Aeronautics, Inc. v. State Roads Commission, 218 Md. 236, 249-250, 146 A.2d 558, 565."
While neither the facts in the above cited case, nor the issue decided, are identical to those involved here the reasoning expressed in the quotation therefrom is sound and equally applicable here. It is sufficiently clear to require no explanation in this opinion.
The decision of the Maryland court in Congressional School of Aeronautics, Inc. v. State Roads Commission, 218 Md. 236, 146 A.2d 558, is even more closely akin to the instant case.
One of the questions involved in that case was the propriety of admission of testimony of an expert witness which showed that the witness based his estimate of value partly upon the limited time for which a prospective willing purchaser might be able to use the property because of the prospect of its loss through condemnation.
The Maryland court held at 146 A.2d. page 565, that:
"* * * evidence of value based upon the effect of the taking involved in a pending condemnation suit is inadmissible. * * * We think that the rule is as applicable to considerations which might tend to depress values as to those which might tend to increase them and that it should also extend to the effect of the prospect of the taking. If the *758 prospect of taking is to be used in gauging market value at the time of the taking, we should get into something of a vicious cycle." (Emphasis added)
In Maryland the rule is, and has long been, that compensation should be awarded on the basis of value as it would be if the lands were not to be taken and the public improvement were not to be made. Moale v. Mayor and City Council of Baltimore, 5 Md. 314. Thus, in that state neither appreciation nor depreciation in value due to the proposed public improvement can be considered. The Congressional School decision applied this rule to the effect of the prospect of condemnation as well as to the effect on value of the completion of the proposed public improvement.
While it is true that Florida, as evidenced by the Sunday case, does not follow the same rule as Maryland insofar as appreciation due to the proposed public improvement this does not prevent or render inconsistent our adoption of the same rule as Maryland on the admissibility of evidence as to value as effected by the prospect of taking as distinguished from the anticipatory effect of the completion of the proposed improvement.
Thus, we conclude that the value of property at the time of taking as depreciated or depressed by the prospect of condemnation is not a proper basis for measure of compensation for the property taken.
Effect can easily be given to this conclusion and to the rule of the Yoder case by holding simply, as we do here, that compensation shall be based on value of the property as it would be at the time of the taking if it had not been subjected to the debilitating threat of condemnation and was not being taken.
This holding is not a new concept. It is merely an application of the principle that value, as the measure of compensation, should be based on the highest and best use to which the property is being, or might reasonably be, put. Yoder v. Sarasota County, supra, and Doty v. City of Jacksonville, 1932, 106 Fla. 1, 142 So. 599, 601. Only by observing this rule is the property owner made pecuniarily whole by being fairly compensated for that which is taken from him.
There can be no doubt that the threat of condemnation restricts the owner's economic use of property in the interim leading to the actual taking, as it did in this case. It prevents the owner from putting his property to the highest and best use. It would be neither fair, equitable or just to compensate him for value of his property as established by such limited and restricted use.
Compliance with the announcements we have made here requires that evidence as to value of the property involved represent the value as it would be without the threat of condemnation and as it would be if it had been put and were being put to its highest and best use. It requires that evidence of depression or depreciation in value due to the prospect of condemnation not be admitted. In appropriate circumstances it might require an instruction to the jury to disregard the effect of the prospect of taking.
We, therefore, conclude that the trial court was correct in granting respondents a new trial and the district court was correct in affirming that order, but not necessarily for the reasons stated in either the order granting new trial or the decision of the district court.
For the reasons above expressed the writ of certiorari heretofore entered is discharged.
DREW, C.J., and TERRELL, THOMAS, ROBERTS, CALDWELL and HOBSON (Ret.), JJ., concur.