Frank A. WOOLLEY and Mildred H. Woolley, Appellants (Defendants below),

v.

STATE HIGHWAY COMMISSION of Wyoming, Appellee (Plaintiff below).

No. 3590.

Supreme Court of Wyoming.

Oct. 19, 1967.

Payson W. Spaulding, Evanston, Clifford L. Ashton, Salt Lake City, Utah, for appellants.

James E. Barrett, Atty. Gen., Glenn A. Williams, James D. Douglass, Sp. Asst. Attys. Gen., Cheyenne, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The Woolleys' property on both sides of Highway 30 (now Interstate 80) near the Wyoming-Utah state line (about four miles west of Evanston, Wyoming) was condemned by the commission and upon its request the question of damages was tried by a jury. Evidence relating to the issue came entirely from expert witnesses, the Woolleys calling three, the commission two. The verdict of the jury, confirmed by the trial court, gave the true value of the lands actually taken as $2,961 and the damages to the remaining portions $257—a total of $3,218. Subsequently, a motion for new trial was denied and appeal taken, it being urged that:

1. The appraisers who testified for the commission erroneously and improperly failed to consider the highest and best use of the property taken.

2. The court erroneously refused to consider or grant appellants' motion to strike the testimony of one of the commission's witnesses.

3. The verdict of the jury was so inadequate as to denote passion, bias, and prejudice.

As appellants note in their argument, the piece of property which caused most of the controversy and the only one in issue here was that affected by a "Lease Agreement," dated April 14, 1958, and a "Supplemental Modification of Agreement" of May 14, 1958, by which the Woolleys purported to lease the property in question to Arex, Inc., for the purpose of establishing a retail gasoline and diesel service station "in consideration of the rental of one cent (1 cent) per gallon on all gasoline sold and one-half cent (½ cent) per gallon on all diesel sold," and providing in the pertinent clauses:

" * * * when the U. S. Government or the State of Wyoming takes over the land for the purpose of establishing a new route * * * [Arex] will move its property from the premises and lease and restore the property to the manner it was when * * * [Arex] took over, so that the road contractors will not be held up.

* * * * * *

" * * * any time * * * [Arex] elects to remove his property and restore

the property to its original condition * * it may do so without penalty.

\* \* \* \* \* \*

" * * * when it becomes actually necessary to vacate * * * [Arex's] present service station site on the leased premises for the purpose of construction of a highway thereon, * * * [Arex] will remove and relocate the building and service station equipment to the northward of its present location still to be located on the * * * [Woolley's] land, so as to be adjacent to the new highway right-of-way.

\* \* \* \* \* \*

"All rentals provided for in the Lease shall be suspended and waived from the time operations discontinue at the present location until such time as the new highway is completed to the extent that Lessee can resume service station operations at the new location.

\* \* \* \* \* \*

"In regards to the provision in the lease which permits * * * [Arex] to remove property and to restore the premises to its original condition without penalty, * * * [Arex] agrees that he may execute said provision only upon written permission of * * * [Woolley] or in case * * * [Woolley] fails to complete any of his obligations stated in the original lease or amendments thereto."

■ On the first point, appellants insist that the appraisers who testified for the commission erroneously and improperly failed to consider the highest and best use of the property taken. They maintain the "true value" of property is the highest and best use to which it may be put, that the best evidence of this is the actual use being made of the property, and that four years prior to the taking appellants entered into the lease with Arex, resulting in approximately $3,000 annual rental, which Bolen, one of the commission's witnesses, knew. Appellants also say that Hamblin, the other expert called by the commission, refused to consider the business conducted on the property, and notwithstanding the court's instruction that the threat of condemnation does not devalue property by limiting its use, the commission's experts did this very thing, at least one of them admittedly considering the "business [lease]" unstable because of the threat of condemnation. Actually, the crux of the matter in this aspect is that on the one side, because there was a lease producing $2,900 annually, appellants insist on a valuation based primarily on the income approach while appellee's witnesses testified that property sold in the vicinity was similar to that taken, even though unaffected by such a lease. Granted, the commission's witnesses gave varying reasons why the existence of the Arex lease did not appear to them to make the land's best and highest use a service station site. Nevertheless, this did not add up to letting the threat of condemnation devalue the property by limiting its use. In Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 688, 122 P. 900, we said, "In estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner," and that, "uses which are so remote and speculative as to add nothing to the market value at the time are not entitled to consideration." Seemingly, in the instant case we are asked to hold that because the use of the property as a service station site was neither remote nor speculative those placing a valuation upon it were bound to a valuation reflecting the service station lease and could give no consideration to whether a prudent investor might reasonably place a service station at such a site. We are cited to nothing which would convince us that the witnesses were so restricted.

■ Concerning appellants' second charge of error wherein their position is that the court erroneously refused to consider or grant appellants' motion to strike

the testimony of witness Hamblin,[1] they insist the court committed prejudicial error in that despite the fact the members of the jury were told otherwise in a subsequent instruction they could have con-. cluded from the court's ruling that the threat of condemnation was a matter they should consider.

There are several reasons why we cannot approve this contention of error. First, the motion was couched in speculation and no clear basis expressed to warrant its being granted. Assuming the amorphous nature of the objection could be overlooked, the authorities presented are unconvincing.

Appellants say that even if they had known of the proposed condemnation that would not have precluded them from making a full use of their property, quoting 27 Am.Jur.2d Eminent Domain § 294:

> "As a general rule, knowledge of the fact that a public improvement is proposed which will result in the taking of his land does not deprive an owner from recovering the value of buildings subsequently erected, since even though preliminary steps have been taken, the making of the contemplated improvement may be abandoned, and it would be highly unjust to deprive an owner of the right to make in good faith the best use of his property except at his peril. A statute denying compensation for any building erected on land after filing a map of a proposed street across it, although proceedings to open the street or condemn the land have not been begun and perhaps never will be, is unconstitutional as depriving the owner of property without just compensation. * * *"

This statement is scarcely helpful as here we are not dealing with improvements.

Annotation, 2 A.L.R.3d 1038, is cited as· discussing the question of time with reference to when valuation should be assessed in condemnation proceedings, but analysis reveals the commentary confined to the question of whether valuation of property where there was a wrongful precondemnation entry by the condemnor should relate to the time of the wrongful entry or to the time of the subsequent initiation of formal condemnation proceedings, a point not in issue in this case.

Appellants also say 1 Orgel, Valuation Under Eminent Domain, § 105 (2d ed.) points out that "it would ·be manifestly unjust to permit a public authority to depreciate property value by a threat of the construction of a Government project and then to take advantage of this de-· preciation in the price which it must pay for· the property when eventually condemned." We find that the cited authority actually says, "It would be manifestly unjust to permit a public authority to depreciate property values by a threat to erect an offensive structure and then to take advantage of this depression in the price which it must pay for the property."

State Road Department v. Chicone, Fla., 158 So.2d 753, 758, and Congressional School of Aeronautics, Inc., v. State Roads Commission, 218 Md. 236, 146 A.2d 558, 565, are cited· for the principle that evi-. dence of value based upon the effect of taking is inadmissible in eminent domain proceedings. It is true that in Maryland neither appreciation nor depreciation in value due to the proposed public improvement can be considered and that while Florida does not follow the same rule as Maryland insofar as appreciation due to a proposed public improvement the court has

---

I. "Q. And because this property was taken by condemnation in 1962, you considered that an unstable lease. A. I considered it was an unstable lease. "Q. It certainly was, and is that the reason you considered it unstable? A. Certainly.
"BY MR. ASHTON: We move to strike this testimony, if the court please, on

the ground that the court is going to instruct this jury—
"BY MR. WILLIAMS: Just a minute, Your Honor, he is stating a conclusion as to what the court is going to instruct.
"BY THE COURT: I can rule on that right now. The objection is overruled. The motion is denied."

held that the value of property at the time of taking as depreciated or depressed by the prospect of condemnation is not a proper basis for measure of compensation for the property taken. Nevertheless, it may be noted that this is not true in all jurisdictions:

"Although some courts have considered it grossly unfair to permit a condemner to take advantage of a depreciation in value resulting from the projected taking, other courts have refused to be swayed by this consideration * * *." 1 Orgel, Valuation Under Eminent Domain, § 106 (2d ed.).

Even if appellants' citation of the various mentioned authorities could have been accepted at face value, their argument becomes entirely academic in light of the trial court's instruction that:

"* * * the threat of condemnation and taking by the plaintiff did not lessen or detract from the fair market value at the time of the taking. Fair market value should be determined on the basis that the State Highway access to the property taken and all other physical factors would remain in the future as they existed at the time of taking without regard to the threat of taking."

Appellants rely on Congressional School of Aeronautics, Inc., v. State Roads Commission, supra, for the principle that failure to strike valuation testimony of a witness, which gave weight to the effect of the taking, was cause for reversal. Considering the literal text of the questions and answers preceding the motion and the motion itself, we cannot see that this was a clear matter of a witness's valuation testimony constituting prejudicial error. Possibly, there is justification in arguing that by the very nature of the lease involved, which lease caused appellants' witnesses to arrive at their valuation by using primarily the income approach, it was obvious that the proposed condemnation of the Woolley land affected that lease; but this is not to say that recognition of that fact meant per se that the witness's concept regard-

ing the involved parcel's highest and best use being semi-commercial was because of this one lease, which he considered affected by the condemnation. The witness Hamblin was very specific in other portions of his testimony that he had been familiar with this parcel and adjacent lands for some time; that in the late thirties one Bertagnalli, a plumber in Evanston, had purchased property on both sides of the state line, on the Wyoming side (permitting the sale of liquor) building a bar and a dance hall, and on the Utah part a cafe; that Bertagnalli gave himself plenty of time to make a go of it but didn't and sold to one Goldie Davis and her husband, who after keeping it for awhile sold in 1954 to Frank Woolley, Woolley selling the cafe and bar October 20, 1958, to the State of Wyoming, and following the acquisition of the bar and lounge by the State the service station came into existence, by virtue of the lease agreement with Arex (according to the exhibits, the pump island was on state property and the balance of the service station on Woolley's land). Under this and other testimony we fail to see, if there was indeed any error, that prejudice resulted from the court's overruling appellants' motion to strike.

■ As to appellants' third argument, that the verdict of the jury was so inadequate as to denote passion, bias and prejudice, they insist that the jury ignored all evidence relating to the business being conducted on the premises by appellants' lessee and that this indicated a clear prejudice against the appellants. It is true that according to evidence adduced by the appellants there were no comparable sales in the vicinity of the Woolley property, and indeed, if in this instance as appellants state "the value of the property must be based upon what the property produces," the jury's verdict was inadequate. Nevertheless, the testimony of appellee's witnesses was to the effect that the Woolley property was comparable to some in an area adjacent to it on which recent sales placed a $300-an-acre valuation. Appellants fail

to direct our attention to any authority which so much as hints that under such circumstances the jury was bound to give credence to the testimony of appellants' witnesses. Moreover, a consideration of the evidence discloses a lack of testimony as to the proportion of the fuel sales at the service station properly allocable to through travelers as related to purchase by local residents to whom the state line location was, by the witnesses' admissions, unimportant. This circumstance tends to make plausible the comparability of the properties upon which the commission's witnesses based their valuation and nullifies any argument as to the verdict's invalidity for the reason thus urged.

We conclude that there was sufficient evidence adduced to support the verdict of the jury, and the judgment must accordingly be affirmed.

Affirmed.