409 So.2d 166 (1982)
Robert M. NALVEN and Lionel I. Nalven, As Trustees, Appellants,
v.
DIVISION OF ADMINISTRATION, State of Florida, Department of Transportation, Appellee.
Nos. 81-62, 81-430.
District Court of Appeal of Florida, Second District.
January 29, 1982.
Lawrence J. Robinson and Terri Jayne Salt of Drymond, Robinson, Bennett & Chase, Sarasota, for appellants.
*167 Alan E. DeSerio and Margaret-Ray Kemper, Tallahassee, for appellee.
GRIMES, Judge.
This appeal poses the question of to what extent a Florida property owner whose land is being condemned is entitled to the enhancement in its value occasioned by the proposed improvement.
Robert and Lionel Nalven, as trustees, appeal from a final judgment awarding them $133,525 for a parcel of their land condemned by appellee Department of Transportation. They contend that the court erred in allowing the Department's expert witness to exclude a prior sale of the parcel and the sale of nearby property in arriving at his assessment of the value of the parcel.
At trial only two appraisers gave an opinion as to the value of the property. In reaching their conclusions, both used the market valuation method of considering sales of comparable properties. Appellants' expert, Sam Rice Caldwell, testified that he considered sales of approximately fourteen parcels and found three that were most comparable for use in placing a value on the property being condemned. The first of these was a 1973 sale of the condemned property itself for $2,100 an acre. The purchaser later defaulted in the payment of the mortgage, and title to the property returned to appellants in foreclosure proceedings. The second comparable sale was of a parcel, known as Creekwood, which sold for $2,365 an acre. The third was a sale of property near Sarasota, known as the Meadows, which sold for $3,500 an acre. After consideration of the similarities and dissimilarities between those properties and appellants' parcel, Caldwell concluded that as of May 6, 1977, the date of taking, the parcel was worth $2,350 an acre. He valued the 91.536 acre parcel at $217,914, including $2,830 for fencing.
The Department of Transportation's expert, Richard L. Phagan, valued the property at $1,440 an acre plus $1,700 for fencing for a total of $133,525. Mr. Phagan said that while he had taken into account a number of comparable sales, he had rejected the prior sale of appellants' property and the Creekwood sale from consideration because the sales price of those parcels had been enhanced by the anticipation of the construction of Interstate 75. Appellants moved to strike Mr. Phagan's testimony on the ground that it was based on the erroneous legal premise that he should not consider any properties that were enhanced by the anticipated improvement. The court in denying the motion stated, "He comes awful close in his appraisal to disregarding general enhancement, but he said, I think in his opinion, it was particularly enhanced or specifically enhanced."
The prior sale of appellants' property involved 1,055 acres of which 91.536 acres were condemned. Mr. Nalven testified that Mr. Norville, the purchaser, knew of the location of the proposed interstate highway because they had discussed it prior to the sale. The sale of the Creekwood parcel, which also occurred in 1973, involved 1,540 acres. The Department of Transportation condemned a portion of that property for the right of way of Interstate 75. Mr. Phagan testified that Jim Doss, a principal in the company which purchased Creekwood, knew of the location of the highway at the time of the purchase. The jury ultimately returned a verdict for $133,525, which was the exact amount to which Mr. Phagan testified.
The case closest in point to this one is Anderson v. State Road Department, 204 So.2d 899 (Fla. 1st DCA 1967), in which the State Road Department appraiser testified that he did not consider any increase in market value that was influenced by the highway project for which the Department was condemning the property. On appeal the court held that the trial court should have stricken this appraiser's testimony because it was based upon a misconception of Florida law with respect to the compensation to be paid for condemned property. Since the jury's award was much closer to the value figure given by the Department's appraiser and more than $100,000 less than the values presented by the property owner's *168 two appraisers, the court reversed for a new trial.
The Florida law upon which the Anderson court relied came from the decisions of the supreme court in Sunday v. Louisville & Nashville Railroad, 62 Fla. 395, 57 So. 351 (1912), and State Road Department v. Chicone, 158 So.2d 753 (Fla. 1963). In Sunday the trial court had charged the jury that in fixing the market value of the property being condemned, the jury was not authorized to take into consideration the enhancement of the value of the property, if any, caused by the proposed improvement. On appeal the supreme court first quoted article XVI, section 29 of the Florida Constitution, which then read:
"No private property nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."
62 Fla. at 396, 57 So. at 351. The court also quoted section 2013, Florida Statutes (1906), which provided that a jury of twelve men should determine the condemnation award and tracked the constitutional definition of compensation. The court then said:
The Constitution contemplates and the statute requires that the issue submitted shall be what is "full compensation" for the property to be appropriated at its then fair actual value, irrespective of or without regard to any benefits that may accrue to the owner of the property from any improvement proposed by the petitioner; but the law does not deny to the owner any real and reasonable enhancement in the market value of the property to be appropriated by reason of "any improvement proposed." If the property naturally, or in common with other property similarly conditioned, increases in market value in anticipation of the proposed improvement, before the appropriation, the compensation therefor is the fair actual market value at the time of the lawful appropriation.
62 Fla. at 397, 57 So. at 351. The court held that the jury charge was erroneous and reversed the case for a new trial.
Chicone dealt with a situation in which a State Road Department witness testified that the value of the lands being taken was depressed by the imminence of the taking, and the court held that under these circumstances compensation should be based on the value of the property as it would have been at the time of the taking if it had not been subjected to the debilitating threat of condemnation. On the other hand, the court, in passing, interpreted the Sunday case as holding that an increase in value of lands occurring in anticipation of a proposed improvement was an element of compensation to be paid for the lands taken. Thus, after Chicone the property owner was entitled to the benefit of any enhancement to the value of his property by the proposed improvement but was not to be penalized if the anticipation of condemnation had the effect of depressing the property value.
In this appeal the Department of Transportation relies primarily upon Pozin v. State Department of Transportation, 281 So.2d 73 (Fla. 1st DCA 1973). In that case the Department's expert had testified that he did not make any allowance in his appraisal of the defendant's property for the enhancement in value attributable to the proposed improvements. The court rejected the contention that this was in conflict with the Sunday rule and concluded by saying:
Finally, the appellee urges in its brief, and we agree, that the trial court did not err in refusing to strike the testimony of its appraiser witness, because there could not be any real and reasonable enhancement in the market value of the property appropriated in the instant case by reason of the proposed improvement subsequent to the time of the exact location of the road and the parcels necessary for the taking were known in the market.

*169 In the case at bar the market was assured of the exact location of the road in question on December 20, 1965, when the Secretary of the Department of Transportation adopted the right-of-way resolution.
281 So.2d at 74-75. In essence, the court apparently felt that the property had been appropriated at the time of the adoption of the Department's right-of-way resolution because the comparable sales which the Department's appraiser declined to consider occurred subsequent to the resolution but prior to the taking. In a concurring opinion Judge Rawls reasoned that the Department's appraiser had a right to decide, within his expertise, that the sales in question were not comparable.
Appellants contend that under Sunday and Chicone any pertinent sale of land comparable to the condemned land which occurs before the date of the taking can be considered in determining value even if the sales price is enhanced by virtue of the proposed improvement. Appellants further assert that even under Pozin they should prevail because the prior sale of their parcel and the sale of the Creekwood property both occurred before November 7, 1974, when the Department passed a resolution adopting a map showing the location chosen for Interstate 75 and well before February 1, 1977, when the Department passed a resolution specifying the particular parcels necessary to be condemned in order to complete the project. In light of the existing case law, appellants are clearly correct. The court should have stricken Mr. Phagan's testimony because of his failure to consider, as comparable sales, the prior sale of the condemned property and the sale of the Creekwood parcel. Moreover, it is obvious that the error was prejudicial because the jury returned a verdict in the same amount as the value testified to by Mr. Phagan.
We might stop here were it not for additional matters which have come to our attention. If the court in Pozin seemed to strain in order to move the cutoff date for enhancement back to the date of the Department's resolution, perhaps this was understandable in light of the law on this subject in other jurisdictions. The position taken by Florida represents what is clearly a minority view. Annot., 147 A.L.R. 66 (1943). Thus, 4 P. Nichols, The Law of Eminent Domain § 12.3151 at 415-24 (rev. 3d ed. P. Rohan 1979), states:
The general rule is that any enhancement in value which is brought about in anticipation and by reason of a proposed improvement is to be excluded in determining the market value of such land, although there is some authority which, contrariwise, allows recovery for such enhanced value.
(Footnotes omitted).
In United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), the United States Supreme Court reviewed a federal condemnation proceeding and adopted a scope of the project rule whereby if land was probably within the scope of a project or, in other words, within the area to be condemned at the time the government became committed to the project, the government would not be required to pay any increase in value arising from the known fact that it would probably condemn the land. The rule was later refined to preclude enhancement when it became a practical rather than a legal certainty that the lands were to be condemned. United States v. Crance, 341 F.2d 161 (8th Cir.), cert. denied, 382 U.S. 815, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965). In United States v. 320.0 Acres of Land, 605 F.2d 762 (5th Cir.1979), the court outlined the reasons supporting the scope of the project rule:
At least three considerations support this principle excluding from compensation "value resulting from the government's special or extraordinary demand for the property"  value that is caused solely by the Government's actions as taker of the condemned property. First, this value is not true "market value" as determined by what a willing buyer would pay a willing seller under "fair market conditions." The Government has entered the "market" as a "purchaser" *170 with a unique and pressing demand, and in so doing has distorted the market; absent the Government's activity as "purchaser" or condemnor, there would be no market reflecting this unique demand. That element of value created solely by the Government's activity as purchaser or condemnor is more "hold-up value" than "fair market value." Second, to force the Government to pay, because of a special public need for property, a premium over that which the property would bring on the open market absent the Government's demand, obviously would increase the cost of public projects and perhaps frustrate some public objectives. Third, to permit recovery of value that is not created by fair, open market conditions would be to award a few private propertyholders windfall gains solely because of public needs and exigencies. See generally United States v. Cors, supra, 337 U.S. 325 at 332-34, 69 S.Ct. [1086] at 1090-91 [93 L.Ed. 1392]; Note, Valuation of Conrail Under the Fifth Amendment, 90 Harv.L.Rev. 596, 597-606 (1977). The underlying notion of the "no value attributable to Government demand" principle, then, is that the Government, when pursuing public benefits through its condemnation power, should not have to spend more for property than would a reasonable and willing private purchaser solely because it is exercising its condemnation power on behalf of the public; instead, the Government is to be equated to a private purchaser buying the property for its "highest and best" nongovernmental use in an open market.
605 F.2d at 782-83 (footnotes omitted).
Most jurisdictions follow principles which approximate the federal scope of the project rule. In essence, the owner is entitled to any rise in the value of his property which may be occasioned by knowledge of a general nature that a project is likely to be located in his neighborhood some time in the future. 4 P. Nichols, supra, § 12.3151(2). However, when the condemning authority has committed itself to placing a project in a particular location, the owner of land within that area is not entitled to an increase in value of his land which results from anticipation of the project. Id. § 12.3151(1). Section 1005(a) of the Uniform Eminent Domain Code prescribes a similar rule, but as yet no state has seen fit to adopt the Code. Of course, as a practical matter, since the value of the land condemned is generally determined by the sales price of similar land, this rule's main effect is to prohibit for the purpose of determining value the use of sales of property which occur after the scope or location of the project is known where the value of that property is enhanced by the project although not taken for it.
An argument can be made that allowing an enhanced value to condemned property even after the location of the project has been determined avoids the discrimination which results when the enhancement is denied to the owner of condemned property while an adjacent owner whose property is not taken is able to retain it. On the other hand, the mere fact that the adjacent landowner may receive a windfall should not obligate the state to pay increased prices for property which it must condemn. See 1 L. Orgel, Valuation Under the Law of Eminent Domain § 98 at 426 (2d ed. 1953).
Why do we labor this point? Because it may be that the State of Florida is paying more for property than it should be. Orgel explains why land being condemned under the rule followed in Florida can easily lead to overpayment.
[T]he possibility that the owner will participate in the benefits from the improvement is removed by the certainty that the land will be taken and its market value therefore experiences no enhancement by reason of prospective benefits. But the relative ease of estimating market value by reference to sales prices of similar property in the neighborhood might lead a court to award a value based on the sales prices of adjacent property.
Id. at 425. If it could be said that the property which is the subject of this appeal was within the scope of the interstate project before the two questioned sales took *171 place, those sales may be good examples of what Orgel is talking about. Obviously, if they comprehended only the property within the right of way there would have been no enhancement in the sales prices; in fact, the sales prices could have been depressed, necessitating the use of the Chicone rule to exclude them from consideration. However, the fact that the bulk of the property involved in each of the two sales was adjacent to and not within the right of way may well explain why their prices were much higher than those of the other sales which Mr. Phagan considered.
Lest we be accused of simply taking issue with long-standing legal principles of our supreme court, we hasten to point out that the Sunday case was decided in 1912 based upon an interpretation of a provision of the Florida Constitution which changed in 1968. Article X, section 6(a) of the new Constitution now reads, "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." The words "irrespective of any benefit from any improvement proposed by such corporation or individual" have been eliminated. Moreover, there is no longer any statute which contains that phrase. The phrase itself has received differing interpretations. Compare Northern Pacific & Puget Sound Railroad v. Coleman, 3 Wash. 228, 28 P. 514 (1891), with Enoch v. Spokane Falls & Northern Railway, 6 Wash. 393, 33 P. 966 (1893). Similar language was even construed by the State of Oregon to mean the exact opposite of what our supreme court held in Sunday. Portland-Oregon City Railway v. Penney, 81 Or. 81, 158 P. 404 (1916). In any event, no Florida court has ever passed on the enhancement question under the new Constitution. In fact, the only case since 1968 which has even purported to discuss the issue is Pozin.
Therefore, we hereby certify to the supreme court the following question:
TO WHAT EXTENT, IF ANY, IS A FLORIDA PROPERTY OWNER IN A CONDEMNATION PROCEEDING ENTITLED TO THE ENHANCEMENT IN THE VALUE OF HIS PROPERTY CAUSED BY THE ANTICIPATION OF THE PROPOSED PROJECT FOR WHICH THE LAND IS BEING CONDEMNED?
Should the supreme court choose to deviate from the Sunday rule, there would undoubtedly be ancillary issues to be decided, but it would be presumptuous of us to endeavor to pose them as additional formal questions. We only note in passing that if a rule similar to the scope of the project rule were to be adopted, the trial courts would need guidance on how to implement it. For example, would it be the function of the court or the jury to determine the date upon which the scope of the project became known? Moreover, would appraisers in their expertise be given the leeway either to rely upon or to exclude a sale of comparable property depending upon whether they believed that the sale came before or after the scope of the project was known or that the sale was or was not affected by the project? See United States v. 320.0 Acres of Land, 605 F.2d at 807-09, for an extensive discussion of these issues. See generally State Road Department v. Falcon, Inc., 157 So.2d 563 (Fla.2d DCA 1963).
Because we are obligated to follow Florida law as it now stands, we reverse the judgment and remand the case for a new trial on the amount of compensation to which appellants are entitled for their property.
BOARDMAN, A.C.J., and CAMPBELL, J., concur.