726 So.2d 789 (1998)
GRANDPA'S PARK, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, et al., Appellee.
No. 97-838
District Court of Appeal of Florida, First District.
December 4, 1998.
Rehearing Denied March 5, 1999.
*790 W.O. Birchfield and Michael D. Whalen of Martin, Ade, Birchfield & Mickler, P.A., Jacksonville, for Appellant.
Pamela S. Leslie, General Counsel and Vance W. Kidder, Assistant General Counsel, State of Florida, Department of Transportation, Tallahassee, for Appellee.
PER CURIAM.
Grandpa's Park, Inc. ("Grandpa's") appeals a final judgment in an eminent domain proceeding. The Department of Transportation ("DOT") took 0.665 of an acre of land from Grandpa's for the extension of I-295 near Jacksonville. The issues raised on appeal concern the valuation of the property taken and the effect of the taking on the remaining property. Appellant contends: (1) the trial court erred in precluding evidence as to the value of the property before its designation allegedly was changed in the city comprehensive plan from light industrial use to residential use due to the threat of the taking; and (2) the trial court erred in prohibiting Grandpa's from introducing evidence as to the diminution in value of the remainder resulting from the destruction of all permittable access to the property. We affirm the trial court's rulings.
Grandpa's position was that the condemned property and the remainder of its 107 acres was reduced in value due both to down zoning in anticipation of the project, and to impairment of access to the remaining property. Grandpa's proffered testimony was to the effect that at one time, the property in question had been designated by the city for light industrial use. At some point, following the announcement of plans to expand I-295, the city changed its comprehensive plan and rezoned the property to low density residential. In addition to taking two parcels totaling 0.665 acre of Grandpa's property, alterations in another area of the extension project eliminated one of two routes which provided access to Grandpa's property. Only one of the two routes leading to the property had sufficient right-of-way to allow development of the property as either an industrial or residential subdivision, and that route was eliminated; however, it did not abut Grandpa's property.
Appellant proceeded under the exception to the general rule that condemned property is valued based on the existing facts at the time of the taking. According to that exception, if the value of the property has depreciated due to the prospect of the taking, compensation should "be based on value of the property as it would be at the time of the taking if it had not been subjected to the debilitating threat of condemnation and was not being taken." See State Road Department v. Chicone, 158 So.2d 753, 758 (Fla. 1963).
In the present case, the trial court found that the partial taking did not cause the city to redesignate the land, and that it had not heard anything to indicate the city had been influenced by DOT in amending the city's comprehensive plan. The court also found there had been no collusion. We agree with appellant that a finding of collusion between the agencies involved would not have been necessary; however, we find appellant's argument concerning the highest and best use of the property to be speculative. Case law supports DOT's position that the proposed highest and best use was not one the property could be put to within a reasonable period of time, because of the additional work that would be required. See Yoder v. Sarasota County, 81 So.2d 219 (Fla. 1955) (it is proper to show the highest and best use to which the property is being put or could reasonably be put at the time of the lawful appropriation or within a reasonable time thereafter). In Jacksonville Transportation Authority v. ASC Associates, 559 So.2d 330 (Fla. 1st DCA 1990), review denied 574 So.2d 139 (Fla. 1990), this court noted: "The supreme court admonished that `[i]t is not proper to speculate on what could be done to the land or what might be done to it to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date.'" This case is distinguishable from *791 Chicone because there the property in question was fully leased when the announcement was made, and almost vacant at the time of the actual taking, thus speculation was not required.
As to the damages to the remainder of Grandpa's property, appellant recognizes the general rule that just compensation does not include the decrease in value to the remainder, but contends this case falls within an exception to that rule found in Lee County v. Exchange National Bank, 417 So.2d 268 (Fla. 2d DCA 1982), review denied 426 So.2d 25 (Fla. 1983), "where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put." Appellant contends that since a portion of its land was taken for the highway project, and that same highway project also resulted in the diminution of access to its property, even though the taking itself did not accomplish that diminution directly, it is entitled to be compensated for damage to the remainder due to loss of access.
Even assuming, without deciding, that the Lee exception is appropriately applied in this case, we conclude it is necessary for the diminished access to have affected an abutting road. As recently as 1996, this court noted that "no compensation is ever paid for the loss of traffic flow or loss of access to a non-abutting road on the remainder of the appropriated property." See State, Department of Transportation v. Ansbacher, 672 So.2d 660 (Fla. 1st DCA 1996). In addition, in State, Department of Transportation v. Kreider, 658 So.2d 548 (Fla. 4th DCA 1995) review denied 669 So.2d 250 (Fla. 1996), the court noted:
Before and after [Palm Beach County v.] Tessler, [538 So.2d 846 (Fla. 1989)] the supreme court has narrowly applied the concept of compensable "loss of access." The trigger for beginning a Tessler analysis has been the destruction of direct access to property from an abutting road.... In Department of Transportation v. Gefen, 636 So.2d 1345 (Fla.1994), the supreme court found no compensable taking resulting from the closing of an Interstate 95 entrance and exit ramp which diminished the traffic flow by the landowner's property. Significant to the court's decision was the absence of any change in access to roads directly abutting the property.
Appellant contends it does not fall within the diminished access cases, because it has suffered a special injury, distinct from other area landowners, by virtue of having lost all permittable access which would allow it to develop the property as a residential subdivision. We disagree, as we believe this case, as presented, clearly falls within the rule stated above. Appellant's theory that, in effect, it has been deprived of all reasonable use of the property, is more appropriate in the context of an inverse condemnation claim.
AFFIRMED.
JOANOS and WOLF, JJ., concur.
BOOTH, J., dissenting with written opinion.
BOOTH, J., dissenting.
I respectfully dissent. The uncontradicted evidence at the hearing on the motion was that the City reclassified the property in anticipation of the condemnation, resulting in substantial devaluation. The City's reclassification from Industrial to Low-Density Residential and road-width requirements, combined with the condemnation, deliver a "one-two punch." The effect of the reclassification and the condemnation was to leave Appellant with a 107-acre tract on which he could build two residences. There remained no "permitable access" for either an industrial park or a residential development. The trial court, in granting Appellee's motion, eliminated the factual basis for Appellant's claim that Industrial was the highest and best use for the property and eliminated Appellant's claim for severance damages.
In State Road Department v. Chicone, 158 So.2d 753, 756 (Fla. 1963), the supreme court held that where the value of the land is affected by the imminence of condemnation, the correct measure is the land's "value as it would be had there been no threat of taking," holding:

*792 Thus, we conclude that the value of property at the time of taking as depreciated or depressed by the prospect of condemnation is not a proper basis for measure of compensation for the property taken.
In the instant case, the property was purchased by the present owner in 1983. In 1988, before the property was identified as the site for the limited access highway, it was designated in the City's comprehensive plan as Industrial, and was zoned Industrial. In December 1991, after the plans for Highway 9-A were known, and a stake marking the route set in Appellant's pasture, the City down-zoned the property from Light Industrial to Low-Density Residential. Defendant's evidence established that once the City learned the route of proposed Highway 9-A, the City changed its comprehensive plan, substantially devaluing Defendant's property. (Record pp. 64-65, 73-74, 76, 96-97.)
In Dade County v. Still, 377 So.2d 689 (Fla. 1979), the trial court correctly kept out evidence of value as affected by an ordinance adopted in anticipation of a road widening project. There, as in the instant case, the effect of the ordinance was to substantially reduce the value of the land. The supreme court agreed, holding that city ordinances adopted many years prior to the condemnation were not a "taking." The court held that when Stills' property was finally condemned for the road project, the jury correctly set the value without the devaluing effect of the ordinances, holding (Still, supra, at 690):
The county urged that it was error to exclude from the jury testimony concerning the effect of these ordinances on the market value of the subject property. The district court rejected this contention on the basis of our decision in City of Miami v. Romer, 73 So.2d 285 (Fla. 1954), and affirmed the action of the trial court, saying: "[T]he principle must be adhered to that no action of the government can constitutionally deprive an individual of his property without full compensation for the taking. Article X, Section 6(a), Fla. Const." [Dade County v. Still,] 370 So.2d at 66.
Department of Transportation v. Gefen, 636 So.2d 1345 (Fla. 1994), is an inverse condemnation case not involving the taking of land. The claim in Gefen was that rights of access and traffic flow on roads abutting the property were diminished by the closing of I-95 entrance and exit ramps. The supreme court ruled that no compensable taking had occurred, but held:
While we find no taking in the instant case, the record reflects that the DOT has preliminary plans to ultimately condemn at least a portion of Gefen's property. While compensation must await the actual taking of the property, City of Miami v. Romer, 73 So.2d 285, 287 (Fla.1954), we have held that a condemning authority cannot benefit from a depression in property value caused by a prior announcement of intent to condemn. State Road Dep't v. Chicone, 158 So.2d 753 (Fla.1963). In Dade County v. Still, 377 So.2d 689 (Fla.1979), the county adopted a right-of-way plan which set minimum widths for certain roads planned as arterial streets for the purpose of giving notice of potential future road expansion. When the county later condemned some of the property within the minimum width designation in order to widen a street, this Court held that compensation must be based on the value that the property had at the time of the taking had it not been subject to the depreciating threat of condemnation. We find Gefen's property to be in an analogous position. Therefore, if the DOT later condemns some or all of her property, compensation will have to be based on the value that the property would have had if the access ramps had not been closed. [Citation omitted; emphasis added.]
Id. at 1346. The foregoing portion of Gefen is pertinent since it refers to the factual situation in this casetaking of land by condemnation after substantial devaluation by announcement of intent to condemn, downzoning and restrictions.
The trial court apparently accepted Appellee's interpretation of the rule of Chicone and Gefen that the devaluation must be caused by *793 the actual filing of condemnation. However, the cases do not support that interpretation. It is the effect of the announcement of intent to condemn that is critical. The actual taking of the land comes later, sometimes many years later, as in Chicone, supra, and Still, supra. The supreme court noted in the Chicone case, supra at 755:
Once selected for condemnation the marketability, both sale and rental, and to some extent the use, of property is sterilized and its value, either as determined by market value or use by the owner, is decreased.
The trial court was also apparently of the view that in order to apply the Chicone rule, the property owner must establish that the governmental entities involved acted in collaboration with each other to achieve the devaluation. Although Appellee has stated that view in its brief here, there are no cases so holding.
Appellee relies on cases relating to diminished access or traffic flow, State, Department of Transportation v. Ansbacher, 672 So.2d 660 (Fla. 1st DCA 1996), and State, Department of Transportation v. Kreider, 658 So.2d 548 (Fla. 4th DCA 1995), and further suggests that inverse condemnation is the only appropriate remedy. Ansbacher, supra, and Kreider, supra, are distinguishable in that they do not involve the loss of all permitable access and devaluation by land use restrictions made in anticipation of condemnation. Further, the supreme court, in DOT v. Gefen, supra, has made clear that inverse condemnation is not the remedy for land use restrictions devaluing the property in anticipation of condemnation. The remedy is correct valuation and compensation when the property is taken for the project.
The jury determines the value in a condemnation case and was required to have the evidence bearing on devaluation and deprivation of access. Factual issues existing as to these matters were improperly removed from the jury's consideration. I would reverse.