715 So.2d 350 (1998)
CITY NATIONAL BANK OF FLORIDA, formerly known as City National Bank of Miami, As Trustee under certain Trust Agreement dated November 21, 1985, and known as Trust Number 5005110, et al., Appellants,
v.
DADE COUNTY, a political subdivision of the State of Florida, Appellee.
No. 97-3155.
District Court of Appeal of Florida, Third District.
August 12, 1998.
Ruden, McClosky, Smith, Schuster & Russell and Thomas R. Bolf, for appellants.
Robert A. Ginsburg, Miami-Dade County Attorney, and Thomas Goldstein, Assistant County Attorney, for appellee.
Before JORGENSON, COPE and SORONDO, JJ.

*351 ON REHEARING DENIED

COPE, Judge.
On consideration of the appellants' motion for rehearing, we withdraw our previous opinion and substitute the following opinion:
This is an appeal by a landowner of a final judgment in an eminent domain matter. The owner contends that the trial court erred by excluding from evidence a conceptual site plan which the owner desired to use as a basis for establishing severance damages. As the trial court's ruling was correct, we affirm.
City National Bank holds as trustee a tenacre tract of vacant land in Dade County, Florida, located at the corner of Northwest 27th Avenue and Northwest 207th Street. It is across the street from Pro Player Stadium.
The property was originally zoned for residential use. After announcement of the plan to build the stadium, the owner decided that the ten-acre tract would be suitable for commercial development. In 1987, the owner prepared a conceptual site plan which called for a hotel, a retail strip shopping center, and four outparcels along 27th Avenue. The outparcels were designed for such uses as a convenience store, fast food restaurant, and a small commercial building.
The County rezoned the property consistent with the conceptual site plan. The southern 3.3 acres were zoned for hotel use and the northern 6.5 acres were zoned for commercial development. However, the owner desired to retain maximum flexibility in developing the property, and did not request approval of the site plan. Consequently, there was no approved site plan for the property.[1]
After rezoning, economic conditions were not suitable for immediate development of the property. Eventually the owner decided to try to sell the entire ten-acre tract for sale in bulk, leaving the question of development for a successor owner. In the meantime, the land remains entirely undeveloped and is used as overflow parking for Pro Player Stadium.
In 1992, the County decided to improve the intersection of Northwest 27th Avenue and Northwest 207th Street. In order to accomplish the improvement, the County condemned a triangular segment of land located at the northeast corner of the owner's property. If the property is visualized as a page of a book, Dade County clipped off a segment of the upper right-hand corner. This was about two percent of the total acreage.
As part of its damage claim, the owner sought severance damages.[2] The owner theorized that, had there been no condemnation order, development of the tract would have proceeded in accordance with the conceptual site plan. Under that plan, there were 610 feet of commercial frontage on Northwest 27th Avenue.[3] Under the conceptual site plan, the 610 feet on 27th Avenue were divided into four approximately 150-foot outparcels. The site plan suggested a convenience store, commercial building, fast food restaurant, and conventional restaurant as likely uses for the four outparcels.
After the taking, the commercial frontage on 27th Avenue was reduced by 116 feet, leaving 494 feet available for development. The expanded roadway ran diagonally across the northeast corner of the property, eliminating much of the proposed 150-foot outparcel which the conceptual plan had placed at the northeast corner of the property.
The owner argued that after the taking, development could no longer proceed in accordance with the conceptual site plan. This meant that the owner would either have to create three oversize outparcels, or else four undersize outparcels, on 27th Avenue. Because *352 the conceptual site plan could not be implemented as drawn, the owner contended that it was entitled to severance damages.
Dade County moved in limine to exclude the conceptual site plan on the theory that it was too speculative to support an award of severance damages. The trial court agreed. As the owner's claim for severance damages was based solely on the conceptual site plan, no evidence was presented at trial on the issue of severance damages. The jury awarded compensation solely for the land taken and no severance damages. The owner has appealed.
According to the Florida Supreme Court:
We have consistently ruled that the amount of compensation to be awarded to a property owner when his property is sought to be taken in an eminent domain proceeding is the value of the land taken at the time of the lawful appropriation. It is appropriate to show the uses to which the property was or might reasonably be applied, and the damages, if any, to adjacent lands. Nevertheless, the value must be established in the light of these elements as of the time of the lawful appropriation. It is not proper to speculate on what could be done to the land or what might be done to it to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date. To permit such evidence would open a floodgate of speculation and conjecture that would convert an eminent domain proceeding into a guessing contest.
Yoder v. Sarasota County, 81 So.2d 219, 220-21 (Fla.1955) (emphasis added; original emphasis and citations omitted).
Here, the owner had a conceptual site plan which had never been submitted for approval. Plainly, the owner's development plans had never proceeded to the point that the owner was prepared to commit itself to any particular site plan. Whether development ever would have proceeded in accordance with this site plan was speculative, and the trial court was correct in so ruling.
Furthermore, even if the owner had sought approval for this particular site plan, it is also speculative whether the County ever would have agreed to it in its proposed form. In this particular case, Northwest 207th Street was misaligned where it crossed Northwest 27th Avenue. This created an awkward traffic flow and a traffic signal problem. Given the increased traffic which would result from development, the County may well have required road access to be regularized before development could proceed. Whether for that or other reasons, there can be no assurance that the conceptual site plan ever would have been approved in its original form. In short, the owner's intentions and the County's possible actions both fall into the realm of speculation, and the conceptual site plan was properly excluded from evidence. See Jacksonville Transp. Auth. v. ASC Assocs., 559 So.2d 330, 334 (Fla. 1st DCA 1990) (cautioning that conceptual plans and speculative future uses are to be excluded from evidence at trial); cf. Circle K General, Inc. v. Hillsborough County, 524 So.2d 1143 (Fla. 2d DCA 1988) ("As ... the site plan approval remained subject to county permitting requirements, ... [t]he mere approval of the site plan was not a guarantee that the county would issue a driveway permit, and appellant could not have reasonably relied upon it as such.").
The owner reads Partyka v. Florida Department of Transportation, 606 So.2d 495 (Fla. 4th DCA 1992), as holding that, as a matter of law, a conceptual site plan is admissible in evidence on the issue of severance damages in a condemnation proceeding. We do not read Partyka as so holding. In that case, the Department of Transportation had condemned a portion of the owner's property in order to widen a road. "The site plans depicted appellant's remaining land at its highest and best use under the existing zoning." Id. at 496 (citation omitted; emphasis added). As we understand it, the owner in Partyka sought to introduce a site plan for the remainder of the property in order to show what kind of use reasonably could be made of the remainder after the taking. That is a different situation from the one now before us.
In the present case, the owner sought to introduce the conceptual site plan for the *353 entire tract before the taking. The owner's purpose in doing so was to show that the taking would cause the loss of the corner outparcel on the site plan. In making that assertion, the owner necessarily contended that, had it not been for the taking, development of the outparcels would have occurred in accordance with the conceptual site plan. When offered for that purpose it was correctly excluded.
The owner also argues that the conceptual site plan should be admitted into evidence because the written report of the county's expert appraiser referred to the conceptual site plan in its discussion of the potential uses of the remainder tract. In one portion of the appraisal report, the appraiser summarized his interview with the owner.[4] The owner explained the concern that the taking of the northeast corner of the property through condemnation would reduce the frontage on Northwest 27th Avenue and would prevent the owner from developing four 150-foot outparcels. The owner said that 150 feet was a standard width for an outparcel of this type in Dade County, and that there would be severance damages to the remainder of the property as a result of the condemnation award.
The appraiser then analyzed the concern voiced by the owner. He concurred with the owner that 150 feet is the standard width for an outparcel of this type in Dade County. He also reported, however, that outparcels of this type can be found with a width of as little as 98 feet. He concluded that the owner could still develop four outparcels in accordance with the conceptual site plan, by reducing the width of each.
The appraiser chose to approach this part of his analysis by accepting the owner's stated intention to develop the property in accordance with the conceptual site plan. The appraiser concluded that the objectives of the conceptual site plan could be accomplished simply by reducing the dimensions of the outparcels. In analyzing the problem this way, the appraiser granted the conceptual site plan greater dignity than it deserved. The fact remains that there was no approved site plan, no development had occurred, and it was entirely speculative whether development would ever take place in accordance with the conceptual site plan. Since the owner's purpose in offering the conceptual site plan into evidence was to support the owner's claim for severance damages, the order in limine was properly entered.
Affirmed.[5]
NOTES
[1] Although the owner contends otherwise, it is abundantly clear that the body with the power to approve the site plan, the county commission, never did so. The county commission resolution rezoned the property but did not approve the site plan.
[2] The parties were in agreement that commercial development was the appropriate use for this tract, along the same general lines suggested in the conceptual site plan. The parties also agreed on the county appraiser's valuation per square foot of the land taken by condemnation.
[3] Proceeding southward, after the 610 feet there were another 320 feet of frontage on Northwest 27th Avenue which had been zoned for hotel use.
[4] The interview was with the beneficial owners of the land trust.
[5] The owner asks us to certify direct conflict with Partyka v. Florida Department of Transportation, 606 So.2d 495 (Fla. 4th DCA 1992), discussed earlier in this opinion. We are not satisfied that there is a direct conflict, and decline to so certify.