937 So.2d 703 (2006)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
TARGET CORPORATION f/k/a Target Corporation d/b/a Target Stores, Inc., f/k/a Dayton Hudson Corporation, a Minnesota corporation, et al., Appellees.
No. 4D05-2308.
District Court of Appeal of Florida, Fourth District.
August 16, 2006.
Rehearing Denied October 16, 2006.
*704 Pamela S. Leslie, General Counsel and Gregory G. Costas, Assistant General Counsel, Tallahassee, for appellant.
Marie Tomassi, Robert H. Buesing and Stephen Tabano of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg, for appellees.
MAY, J.
Location, location, location  so what's the property worth? The Department of Transportation [DOT] appeals a business damage award in an eminent domain proceeding. The property owner, Target Corporation, filed a cross-appeal. Each side claims error in evidentiary rulings concerning the value of the property. We reverse.
In the late 1970s, the DOT publicly recorded preliminary studies for long-range plans to widen Southern Boulevard, including an overpass, where it intersects State Road 7. In 1991, Target purchased the land on the northeast corner of Southern Boulevard and State Road 7.
Prior to purchasing the land, Target undertook due diligence in researching appropriate locations in the Village of Royal Palm Beach to build a store. According to testimony, Target spent one to two years, and $100,000 to $200,000 researching new locations. The research included government requirements, traffic studies, site access, and negotiations for shared utilities, parking, and common architectural theme. *705 There was no evidence that Target discovered DOT's recorded plans for widening Southern Boulevard prior to making the purchase. Target's planning model provides that each store will operate for sixty-two years, with improvements undertaken each decade.
In September 1991, Target submitted a site plan to the Village for approval. The overall development was to take place in phases. The first phase included the construction of a Target store and an immediately adjacent garden center, all of the parking area for the entire property (except for the undeveloped future retail shops), and all of the appropriate drainage, utility, and roadway improvements. The site plan included a section of land nearby the Target store designated as future retail shops, consisting of 10,600 square feet, and three out-parcels for future businesses.
The Village approved the site plan, but required further submission and approval of any future development beyond the first phase. The submitted site plan did not designate a relocation of the garden center or expansion of the Target building. In 1992, Target removed the land designated for future retail shops from the real estate market and retained the property for its own future use. Target sold one out-parcel to Applebee's International, Inc. The Village approved the plans for construction of the restaurant.
In the early 1990s, DOT reconsidered its recorded proposed plans for widening Southern Boulevard, including an overpass, and held public hearings on the matter. In 1995, the Village sent Target a letter seeking support of DOT's plans to widen Southern Boulevard; the Village did not support the proposed overpass. Target maintains this letter was the first time it became aware of DOT's plans for Southern Boulevard. Because the proposed widening of the road would result in a taking of virtually all of the two remaining out parcels, Target took the land off the real estate market. Funding for widening Southern Boulevard was authorized in 1997-98. In 1999, the study of DOT's widening project of Southern Boulevard was compiled into a data book.
In 2002, Wal-Mart, Target's biggest competitor built a superstore less than a mile away. Target's sales leveled in 2002 and 2003, but experienced a 12% increase between 2003 and 2004.
At the end of Target's first ten years of operation, it did not renovate or expand its physical plant either because it felt hindered by DOT's road plans or because as a business strategy it planned to build a superstore in a different location. In 2001, Target decided to abandon the location; it relocated to a newly built superstore in October 2004. Target sold the subject property for $6,000,000 in December 2004.
In 2002, DOT filed its petition for eminent domain of three parcels consisting of the actual land being taken that was owned by Target, a permanent easement along the taken land, and a temporary construction easement. The trial court entered an order for the taking in January 2003. The real estate and business damages were tried to a jury in February 2005.
Prior to trial, the DOT moved to exclude evidence of Target's plan to relocate its garden center to the vacant land designated on the site plan for future retail shops and to build a 10,600 square foot expansion of its existing store where the garden center had been. The approved 1991 site plan did not include that option, Target had not submitted plans for this expansion, and no monies had been expended toward the plan. The court denied the motion.
*706 At trial, Target presented four calculations on the value of its business damages. Target requested $2.5 million for business damages, a value between the highest and lowest of the four calculations. The DOT calculated Target's business damages at $116,200, which related to the expected negative impact on parking spaces during the period it would take to cure the loss. The DOT also argued that Target did not suffer any business loss because it moved to the new location.
Target claimed $9,465,562 in real estate damages. The DOT argued that real estate damages were limited to $2,433,225.
The jury awarded Target $2.5 million in business damages and $2,433,225 in real estate damages. From the judgment, the DOT appeals the award of business damages. Target's cross appeal focuses on the real estate damage award. Both parties argue that errors in evidentiary rulings warrant a reversal.
The ultimate objective of condemnation proceedings is the determination of just compensation to the property owner. State Road Dep't v. Chicone, 158 So.2d 753, 757 (Fla.1963). When the taking is only part of a piece of real property on which there is an established business for a certain duration, the owner is entitled to just compensation for "the probable damages to such business which the denial of the use of the property so taken may reasonably cause." § 73.071(3)(b), Fla. Stat. (2002).
It is appropriate to show the uses to which the property was or might reasonably be applied, and the damages, if any, to adjacent lands. Nevertheless, the value must be established in the light of these elements as of the time of the lawful appropriation. It is not proper to speculate on what could be done to the land or what might be done to it to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date.
Yoder v. Sarasota County, 81 So.2d 219, 221 (Fla.1955), overruled in part, State Road Dep't v. Chicone, 158 So.2d 753, 758 (Fla.1963). In determining a reasonably probable loss as opposed to a speculative loss, the property owner must show affirmative steps undertaken to make future plans a reality. See, e.g., id.; City Nat'l. Bank of Fla. v. Dade County, 715 So.2d 350 (Fla. 3d DCA 1998) review denied, 727 So.2d 904 (Fla.1998); Stack v. State Road Dep't, 237 So.2d 240 (Fla. 1st DCA 1970).
The DOT argues the trial court erred in allowing Target to introduce evidence concerning its plan for future expansion. It maintains that City National Bank controls this issue. It suggests the lack of an approved site plan and no affirmative action on Target's part to effectuate an expansion made this element of business damages too speculative for consideration. Target responds that the approved site plan from 1991 and its corporate history for expanding its stores eliminates any concern over speculation. We do not find City National Bank dictates the outcome, but we do find it instructive.
In City National Bank, the property owner owned vacant land across the street from Pro Player Stadium. It claimed the trial court erred when it excluded a conceptual site plan it intended to introduce to support his claim for severance damages. The site plan "called for a hotel, a retail strip shopping center, and four outparcels." City Nat'l Bank, 715 So.2d at 351. The county subsequently rezoned the land in conformity to the uses designated on the site plan; however, the owner never submitted the site plan to the authorities for approval. At the time of the taking, the *707 undeveloped land was on the market for sale.
At trial, the owner intended to argue that he would have proceeded with the site plan if there had been no condemnation order. The county filed a motion in limine to exclude the conceptual site plan, and argued it was too speculative. The trial court granted the motion. The Third District affirmed, finding the unapproved site plan and lack of any affirmative effort toward fulfilling the plan was too speculative in nature for the jury's consideration.
Here, Target introduced evidence that phase one of a multi-phased site plan had been approved by the Village. The site plan included future retail stores and three out-parcels, but it did not include the relocation of Target's garden center to the vacant land designated on the original site plan for future retail shops nor the 10,600 square foot expansion of the existing store where the garden center had been. While Target introduced evidence of its practice in developing its store locations, it failed to prove any affirmative steps taken in time, money, or energy towards the proposed expansion of this store.
We do not think the lack of approval by the Village of the other phases of the original site plan alone precludes Target from introducing that plan and arguing that it had plans for future building on this location. But, it does not give Target an unlimited license to conjure up other plans, which were neither included in the submitted site plan nor for which any affirmative steps were taken. We therefore hold that the trial court erred when it denied the DOT's motion in limine to exclude Target's evidence that it proposed to relocate its garden center to the spot allocated for future retail shops and to expand its building where the garden center had been. This does not prevent Target from introducing the original site plan which included future plans for expansion upon retrial.
On its cross appeal, Target argues the trial court abused its discretion in permitting the testimony of rebuttal witnesses, who testified to the history of the Southern Boulevard expansion and the public's knowledge of the plan. Target suggests the testimony negatively impacted the jury's award for real estate damages.
The trial court's discretion in admitting evidence is limited "by the rules of evidence." Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001). Any evidence that tends to "prove or disprove a material fact" is logically relevant evidence. § 90.401, Fla. Stat. (2004). Because we find, as did the trial court, that this testimony was relevant to Target's business damages and Target opened the door for this testimony by claiming due diligence in selecting the site, we find no error in its admission.
We therefore reverse the business damages award and remand the case to the trial court for a new trial. The real estate damages award addressed in Target's cross-appeal is affirmed. The new trial is restricted to business damages. See Causeway Vista, Inc. v. State, Dep't of Transp., 918 So.2d 352, 355-56 (Fla. 2d DCA 2005) (new trial restricted to severance damages because there was no error as to the other damage issues).
Reversed and Remanded.
STEVENSON, C.J., and GUNTHER, J., concur.